Present: All the Justices

DORIAN LEE-KIRK SHACKLEFORD

v.  Record No. 001795  OPINION BY JUSTICE CYNTHIA D. KINSER
                                        June 8, 2001
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Dorian Lee-Kirk Shackleford, a juvenile and citizen of Jamaica, was charged with delinquency in petitions alleging that he had committed three drug-related offenses.  The juvenile and domestic relations district court (juvenile court) subsequently transferred Shackleford to the circuit court.  There, the court tried Shackleford as an adult in a bench trial and convicted him of possession with intent to distribute cocaine in violation of Code § 18.2-248, transporting one ounce or more of cocaine into the Commonwealth with the intent to sell or distribute in violation of Code § 18.2-248.01, and possession of a firearm with intent to distribute a controlled substance in violation of Code § 18.2-308.4(B).[1]  Shackleford then appealed his convictions to the Court of Appeals.  That court affirmed the convictions.  Shackleford v.

_____

[1] The circuit court sentenced Shackleford to a total of 23 years, with 16 years suspended; a fine of $2,500; and a suspension of his operator's license for a period of six months.

Commonwealth, 32 Va. App. 307, 329, 528 S.E.2d 123, 134, (2000).

On appeal to this Court, Shackleford challenges the jurisdiction of the circuit court because his parents did not receive notice of certain proceedings, the voluntariness of his statement to police, the seizure of certain physical evidence, and the sufficiency of the evidence. Finding no error, we will affirm the judgment of the Court of Appeals.

FACTS

We will recite the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party before the circuit court. Johnson v. Commonwealth, 259 Va. 654, 662, 529 S.E.2d 769, 773, cert. denied, ___ U.S. ___, 121 S.Ct. 432 (2000); Walker v. Commonwealth, 258 Va. 54, 60, 515 S.E.2d 565, 568 (1999), cert. denied, 528 U.S. 1125 (2000). We also accord that evidence all inferences fairly deducible from it. Horton v. Commonwealth, 255 Va. 606, 608, 499 S.E.2d 258, 259 (1998) (citing Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)).

Two law enforcement officers with the Virginia State Police, Special Agent J.C. Miers, III, and Trooper Mike Hall, were conducting an undercover drug interdiction at

the Greyhound bus station in Lynchburg.  At approximately 10:15 a.m. on January 7, 1998, Miers and Hall observed Shackleford exit a bus that had just arrived.  At some point after Shackleford entered the bus terminal, he approached Miers, who was wearing civilian clothes, and asked for the telephone number of a local taxicab company.  Miers found a listing for taxicabs in a telephone directory and pointed it out to Shackleford.  After Shackleford made a telephone call, Miers displayed his police badge to Shackleford and asked to speak with him.  Shackleford agreed and accompanied Miers to a corner inside the bus terminal where they engaged in further conversation.

During that conservation, Miers asked Shackleford why he was in Lynchburg.  In response, Shackleford stated that he was traveling from New York to Lynchburg to visit his sick aunt in the hospital and that there were things in his carry-on bag that she needed.[2]  According to Miers, Shackleford then changed his story by stating that his aunt was not in the hospital but at her residence, and that he was going to take a taxicab to some other location where his aunt would pick him up later.  Miers testified that he then became suspicious and asked Shackleford for permission

---

[2] That carry-on bag was the only luggage that Shackleford had with him.

3

to search the bag.  Shackleford did not consent, stating that the bag contained his aunt's personal items and that he did not know what was in the bag.

The taxicab arrived then, and Shackleford told the taxicab driver to take him to a motel just north of the city limits of Lynchburg.  After Shackleford got into the taxicab with his bag, the taxicab left the bus terminal; Hall and Miers, traveling in separate vehicles, followed the taxicab.  En route, Miers and Hall both observed Shackleford shifting from side to side in the taxicab and leaning over.  When the taxicab arrived at the motel, Shackleford exited on the passenger side, set his bag on the ground, and left the back door of the taxicab open. Miers then advised Shackleford that he was free to go but that his bag had to remain there long enough for a dog trained in the detection of narcotics (K-9 unit) to sniff it.[3]  Miers testified that Shackleford then stated, "you can go ahead and search my bag, there's no drugs or anything in it."

While Miers was talking with Shackleford at the motel, Hall requested and received permission from the taxicab

---

[3] Prior to arriving at the motel, Hall called another law enforcement agency and requested that a K-9 unit be taken to the motel.  When Shackleford arrived at the motel, a uniformed police officer was already there with the dog.

driver to search the taxicab.  During that search, Hall discovered a semi-automatic weapon "under the lip part of the backseat" on the passenger side of the taxicab.  The weapon was in a white, opaque shopping bag.  Hall then requested the uniformed officer "to run" the K-9 unit on the vehicle, and when he did so, the "dog alerted" on a package wrapped in tape.  That package was located underneath the front, passenger seat and contained 14 plastic baggies, each of which contained an off-white substance later determined to be a total of 194.96 grams of cocaine.  The taxicab driver testified that he had cleaned his taxicab the previous night and that Shackleford was his first fare that day.  The driver further stated that he heard what sounded like someone sticking a bag or paper under the seat while en route from the bus terminal to the motel, although he admitted he did not see Shackleford doing so.

After the gun and cocaine were discovered, Miers placed Shackleford under arrest and transported him to the police station.  At the station, Miers advised Shackleford of his Miranda rights, and because Shackleford had already told Miers that he was 17 years old, Miers also advised him that he could have his parents present during questioning.  Shackleford signed a waiver-of-rights form and, without

5

requesting the presence of either a lawyer or his parents, stated that he was a naturalized citizen and was staying in New York. He also told Miers that his father and mother were estranged, that his father lived in Jamaica, and that his mother had taken a trip to that country.

In a hand-written statement, Shackleford said that he had received an anonymous telephone call advising that he could earn some money if he did as he was told. According to Shackleford, the caller knew Shackleford needed money. The caller directed Shackleford to pick up a bag at a certain location and never to look inside the bag. After writing out that statement, Shackleford told Miers that he picked up the bag at a city park in the borough of the Bronx in New York City and that he then purchased a one-way bus ticket from New York City to Lynchburg with money that he found in an outside pocket on the bag.[4]

The petitions filed in the juvenile court charging Shackleford with the drug-related offenses listed Shackleford's mother's name and address. They also contained the name of Shackleford's father and listed his address as Kingston, Jamaica. Pursuant to Code § 16.1-269.1, the Commonwealth moved to transfer Shackleford to

the circuit court. After a hearing on that motion, the juvenile court found probable cause to believe that Shackleford had committed the delinquent acts alleged, see Code § 16.1-269.1(A)(2); and that Shackleford was 14 years of age or older, was competent to stand trial and was "not a proper person to remain within the jurisdiction of the juvenile court." Code § 16.1-269.1(A)(4). Accordingly, the juvenile court transferred Shackleford to the circuit court to be tried as an adult.

Shackleford appealed the transfer decision to the circuit court pursuant to Code § 16.1-269.4. Prior to the hearing on that appeal, Shackleford moved to continue the proceedings because his mother had not been notified of the hearing. The circuit court denied the motion, and subsequently advised the Commonwealth that it could seek indictments. See Code § 16.1-269.6(B).

After the grand jury returned a three-count indictment against Shackleford, he moved to dismiss that indictment, in part, because of the lack of notice to his parents. He argued that the circuit court lacked jurisdiction because neither of his parents was notified of the hearing in circuit court regarding his appeal of the transfer

---

[4] At trial, Shackleford testified that he followed the caller's instructions because the caller threatened harm to

7

decision.  He also objected to the court's jurisdiction because his father was not notified of either the initiation of proceedings in the juvenile court or the transfer hearing in that court.  The circuit court overruled the motion.

Prior to trial, Shackleford moved to suppress his statement and the physical evidence found in the taxicab. The circuit court also overruled that motion.

ANALYSIS

Shackleford's assignments of error raise three separate questions: (1) whether the circuit court had jurisdiction to try Shackleford on the indictment because his parents did not have notice of certain proceedings, (2) whether his statement to law enforcement officials was voluntarily given and the physical evidence was legally seized, and (3) whether there was sufficient evidence to support his convictions.  We will address these questions in that order.

I. PARENTAL NOTIFICATION

The question of parental notification involves different facts and issues with regard to each of Shackleford's parents.  Hence, we will consider each parent separately.

Shackleford's family if he did not do so.

8

First, as to Shackleford's mother, he contends that the circuit court lacked jurisdiction to try him on the indictment because his mother was neither notified of nor present at the hearing before the circuit court on his appeal of the transfer decision.[5]  In making this argument, Shackleford relies on the provision in Code § 16.1-263(B) requiring that "[n]otice of subsequent proceedings shall be provided to all parties in interest."  According to Shackleford, the hearing in circuit court on his appeal of the transfer decision was a "subsequent proceeding[],"  about which his mother should have received notice.

We do not accept Shackleford's contention that his mother did not have notice of that hearing in circuit court.  At the transfer appeal hearing, Shackleford's juvenile probation officer testified that he spoke with Shackleford's mother on the morning of that hearing.  She

_____

[5] Shackleford makes only a jurisdictional argument with regard to the lack of notice to his mother.  He does not contend that he was prejudiced in any other way because of her failure to attend the hearing on his appeal of the transfer decision.

Shackleford also does not contest the fact that his mother received notice of the petitions and initiation of proceedings in the juvenile court, and a summons advising her of the time, date, and place of the initial hearing on those petitions.  Additionally, Shackleford's counsel acknowledged to the circuit court that Shackleford's mother received notice of and was present at the transfer hearing conducted in juvenile court.

told the probation officer that she could not travel from New York to attend the hearing because of her financial situation and work schedule. The probation officer testified similarly at a subsequent hearing on Shackleford's motion to dismiss the indictment. At that hearing, the circuit court made a factual finding that Shackleford's mother had notice of the transfer appeal hearing in circuit court. That factual finding is supported by sufficient evidence. See Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736 (1985) (factual findings of court will not be disturbed on appeal unless plainly wrong or without evidence to support them). Accordingly, we hold that Shackleford's mother had actual notice of the transfer appeal hearing in circuit court and that such notice satisfied any statutory notice requirements of Code § 16.1-263(B). Roach v. Director, Dep't of Corrections, 258 Va. 537, 544-45, 522 S.E.2d 869, 872 (1999), cert. denied, 528 U.S. 965 (1999); see also Turner v. Commonwealth, 216 Va. 666, 668, 222 S.E.2d 517, 519 (1976).[6]

_____

[6] Because Shackleford's mother had actual notice, we do not reach the question whether a hearing in circuit court on an appeal of a transfer decision by the juvenile court is a "subsequent proceeding[]" under Code § 16.1-263(B). Nor do we decide whether the absence of such notice has any

We now turn to the issue regarding notice to Shackleford's father. Unlike his mother, Shackleford's father received neither notice of the petitions and initiation of proceedings in the juvenile court nor the summons specified in Code § 16.1-263(A). The father also did not have notice of the hearing in circuit court on the transfer appeal, nor did he voluntarily appear at any of the proceedings in either the juvenile court or the circuit court. Relying on the decision in Commonwealth v. Baker, 258 Va. 1, 516 S.E.2d 219 (1999) (per curiam), aff'g 28 Va. App. 306, 504 S.E.2d 394 (1998), Shackleford argues that the lack of notice to his father divested the circuit court of its jurisdiction to try him on the indictment after his transfer from juvenile court.

Pursuant to Code § 16.1-269.6(E), Shackleford raised the lack of notice to his father in his motion to dismiss the indictment, which he filed and the circuit court heard before Shackleford's arraignment.[7] Nevertheless, the Court of Appeals held that, because the offenses were committed after July 1, 1996, the provisions of Code § 16.1-269.1(E)

jurisdictional or constitutional implications as argued by Shackleford.

[7] Code § 16.1-269.6(E) provides that "[a]ny objection to the jurisdiction of the circuit court pursuant to this article shall be waived if not made before arraignment."

11

are controlling. That section states that "[a]n indictment in the circuit court cures any error or defect in any proceeding held in the juvenile court except with respect to the juvenile's age." In Dennis Moore v. Commonwealth, 259 Va. 405, 410, 527 S.E.2d 415, 418 (2000), this Court held that a defect caused by failure to notify a defendant's biological father of the initiation of juvenile court proceedings was cured by a grand jury indictment. Citing Dennis Moore, the Court of Appeals concluded that, since Shackleford did not raise the failure to comply with the parental notification provisions in Code §§ 16.1-263(A) and -264 before the indictment was returned in circuit court, that indictment cured any defect resulting from the lack of notice to his father. Shackleford, 32 Va. App. at 318, 528 S.E.2d at 129. The Court of Appeals reached the same conclusion regarding the failure to notify Shackleford's father of the hearing in circuit court on the transfer appeal. Id. at 319, 528 S.E.2d at 129.

Shackleford contends that our decision in Dennis Moore is inapposite. In that case, the juvenile court certified felony charges to the grand jury after conducting a preliminary hearing under Code §§ 16.1-269.1(B) and (C). Dennis Moore, 259 Va. at 408, 527 S.E.2d at 416-17. In contrast, Shackleford's transfer to circuit court was under

12

Code § 16.1-269.1(A), and he then appealed that transfer decision pursuant to Code § 16.1-269.4. The provisions of Code § 16.1-269.4 authorize an appeal only from a transfer decision made under subsection A of Code § 16.1-269.1. Shackleford argues that the procedural posture of his case is, therefore, different from that in Dennis Moore. Noting what he terms as a conflict between the provisions of Code §§ 16.1-269.1(E) and -269.6(E), he argues that Code § 16.1-269.1(E) does not cure the notice defects because he timely raised his objection before arraignment in accordance with Code § 16.1-269.6(E).

Shackleford is correct about the procedural distinction between his case and the circumstances in Dennis Moore. However, that distinction is not dispositive. The terms of Code § 16.1-269.6(E) establish a deadline before which any objections to the jurisdiction of the circuit court based on defects in the transfer process must be raised. See David Moore v. Commonwealth, 259 Va. 431, 440, 527 S.E.2d 406, 410-11 (2000) (holding that waiver prescribed by Code § 16.1-269.6(E) applies only to defects in transfer proceedings conducted pursuant to Article 7). According to the provisions of that section, the deadline for making such objections is the date of

13

arraignment. If they are not raised before arraignment, the objections are waived.

In contrast, Code § 16.1-269.1(E) is not a "waiver" provision but rather a "curative" one. This section states that an indictment "cures any error or defect in any proceeding held in the juvenile court." (Emphasis added.) Although Shackleford timely raised his objection to the jurisdiction of the circuit court before his arraignment pursuant to Code § 16.1-269.6(E), the alleged defect based on the failure to comply with the notice requirements of Code §§ 16.1-263(A) and -264 with regard to his father was cured by the indictment. In other words, the indictment cured the defect raised in Shackleford's objection before he made the objection.

As this Court noted in David Moore, 259 Va. at 440, 527 S.E.2d at 411, "the legislature has the authority to provide for a waiver of a defect in the transfer proceeding." Likewise, the legislature has the authority to create a cure for any defect in the proceedings in juvenile court, thereby eliminating certain objections before the deadline by which they would otherwise have to be raised. Thus, we hold that any alleged defects in the juvenile proceedings with regard to Shackleford's father were cured by the indictment and that the circuit court,

14

therefore, was not in any manner divested of its jurisdiction to try Shackleford on the charges set forth in the indictment.

This holding also applies to the lack of notice to Shackleford's father about the hearing in circuit court on the transfer appeal. While we recognize that Code § 16.1-269.1(E) speaks in terms of curing defects in the proceedings in the juvenile court, an appeal from a transfer decision under Code § 16.1-269.4 is the final step in the transfer process commenced under Code § 16.1-269.1(A). We believe that the legislature intended for an indictment to cure any defects in that entire process. Thus, the indictment also cured the failure to notify Shackleford's father of the hearing in circuit court on the transfer appeal.[8]

## II. STATEMENT AND PHYSICAL EVIDENCE

In this assignment of error, Shackleford asserts three reasons why the circuit court should have suppressed his statement and the physical evidence. Two of those reasons relate solely to his statement: (1) that his rights under

_____

[8] At the hearing in circuit court on the transfer appeal, Shackleford did not object to the lack of notice of that hearing to his father, as he did with regard to his mother. Shackleford did not raise the lack of notice to his father with regard to the transfer appeal hearing in

the Vienna Convention on Consular Relations and Optional Protocol on Disputes (Vienna Convention), 21 U.S.T. 77, T.I.A.S. No. 6820 (Apr. 24, 1963), and the Due Process Clause of the Constitution of the United States were violated because he was never advised of his right to speak with an official of the Jamaican Embassy, and (2) that he was improperly advised of his Miranda rights because the police officer modified the waiver-of-rights form to say that Shackleford had a right to have a lawyer "or parents" present during interrogation.

The third reason pertains to his statement as well as the seizure of the firearm and cocaine. Shackleford claims that he was detained at the motel when Miers told him that his bag had to remain there until the K-9 unit sniffed it. According to Shackleford, that detention was without "reasonable suspicion that criminal activity was afoot" and in violation of his Fourth Amendment rights. Thus, argues Shackleford, suppression of the evidence is required under the "fruit of the poisonous tree" doctrine because the illegal detention led to both his statement and discovery of the physical evidence. We find no merit in any of these arguments.

---

circuit court or the proceedings in juvenile court until he filed his motion to dismiss the indictment.

16

First, in Kasi v. Commonwealth, 256 Va. 407, 419, 508 S.E.2d 57, 64 (1998), cert. denied, 527 U.S. 1038 (1999), this Court addressed a defendant's claim that a violation of his rights under the Vienna Convention required suppression of a confession. There, we held, contrary to Shackleford's argument, that the provisions of the Vienna Convention create no legally enforceable individual rights. Id. Continuing, we stated that Article 36, the same provision upon which Shackleford relies, "merely deals with notice to be furnished to the consular post of a national's state when the national is arrested or taken into custody in a foreign state."[9] Id. Accordingly, we conclude that any failure to advise Shackleford about his purported right to speak with an official of the Jamaican Embassy did not violate the Vienna Convention or any rights secured to him by the Constitution of the United States. Likewise, to the extent that Shackleford suggests that he would not have pled guilty if he had been advised that he could contact the Jamaican Embassy, that contention is, at best, speculative. See id.

---

[9] After the Commonwealth learned that Shackleford was a Jamaican citizen, it sent a letter dated March 9, 1998, to an official of the Jamaican Embassy, detailing the charges that had been placed against Shackelford and advising where Shackleford was being detained. The Commonwealth also

Next, with regard to the waiver-of-rights form, Shackleford contends that Miers' addition of the words "or parents" to that form minimized the importance of the right to counsel and caused him to believe that he had the right to have either counsel or his parents present during interrogation, but not both.  In pertinent part, the modified, preprinted form that Shackleford signed contained the following information:

> YOU HAVE THE RIGHT TO TALK TO A LAWYER OR PARENTS FOR ADVICE BEFORE WE ASK YOU ANY QUESTIONS AND TO HAVE A LAWYER OR PARENTS WITH YOU DURING QUESTIONING.

Miers testified that he told Shackleford that, since Shackleford was a juvenile, he had the right to have his parents present "in addition to or in substitute for a lawyer."

We conclude, as did the Court of Appeals, that "Shackleford voluntarily and knowingly waived his Fifth Amendment rights to remain silent and to have counsel present during a custodial interrogation."  Shackleford, 32 Va. App. at 323, 528 S.E.2d at 131.  The modification to the waiver-of-rights form did not diminish Shackleford's right to counsel.  Considering Miers' additional explanation to Shackleford, we fail to see how Shackleford

_____

explained the proceedings then pending in the juvenile court.

18

could have been misled into believing that, if he asked to have his parents present during the questioning, he could not also have counsel present. Moreover, Shackleford did not request to have either present during the interrogation; so, the options presented to Shackleford regarding his rights did not, in fact, lead to any election that even arguably affected his right to counsel. Miers also testified that Shackleford acknowledged that he understood his rights and so indicated by checking the appropriate box on the waiver form and signing it. Therefore, we find that Shackleford was fully advised of his Miranda rights and voluntarily waived them. The Court of Appeals did not err in upholding the circuit court's refusal to suppress Shackleford's statement.

Last, we do not decide whether Miers' statement at the motel that Shackleford was free to go but that his bag had to remain there long enough for the narcotics dog to sniff it was tantamount to detaining Shackleford. The physical evidence that Shackleford claims should have been suppressed was not found on his person or in the bag. Rather, the weapon and cocaine were found in the taxicab that Shackleford had exited. At that point, Shackleford had no expectation of privacy in the items that he left in the taxicab. See Bramblett v. Commonwealth, 257 Va. 263,

19

274, 513 S.E.2d 400, 408, cert. denied, 528 U.S. 952 (1999) (defendant had no expectation of privacy in box left at sister's home).  And, Hall searched the taxicab only after the taxicab driver consented to the search.  See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973) (search conducted pursuant to valid consent does not implicate Fourth Amendment).

Once the firearm was lawfully seized and the package was discovered in the taxicab, probable cause existed to place Shackleford under arrest.  Consequently, Shackleford's statements were made after his lawful arrest and after he had been advised of his Miranda rights.  Thus, as the Commonwealth argues, there simply was no "fruit" from the allegedly "poisonous tree."  Neither the physical evidence nor Shackleford's statement was obtained in violation of his Fourth Amendment rights.

### III. SUFFICIENCY OF THE EVIDENCE

When reviewing the sufficiency of the evidence after a conviction, we consider that evidence in the light most favorable to the Commonwealth, and we affirm the conviction unless it is plainly wrong or without evidence to support it.  Horton, 255 Va. at 614, 499 S.E.2d at 262 (citing Higginbotham, 216 Va. at 352, 218 S.E.2d at 537)).  The circuit court sitting without a jury in this case acted as

20

the fact finder; hence, the court's judgment is accorded the same weight as a jury verdict. Evans v. Commonwealth, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975). As the fact finder, the court "need not believe the accused's explanation and may infer that he is trying to conceal his guilt." Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981).

After reviewing the evidence and considering Shackleford's arguments, we conclude, as did the Court of Appeals, that there is sufficient evidence to support his convictions. We need not repeat all the evidence and reasons outlined by the Court of Appeals that warrant this conclusion. See Shackleford, 32 Va. App. at 324-29, 528 S.E.2d at 132-34 for a discussion of these points. However, we will emphasize some key reasons why the Court of Appeals did not err in finding sufficient evidence to support the convictions. In doing so, we reiterate that the circuit court, as the fact finder, was not bound to accept Shackleford's explanation and may have concluded that he was lying to conceal his guilt. See Black, 222 Va. at 842, 284 S.E.2d at 610.

First, in regard to his conviction for possession of cocaine with the intent to distribute, Shackleford asserts that he had no idea what was in the bag that he brought to

Lynchburg from New York City at the request of an allegedly anonymous telephone caller. He claims that the Commonwealth failed to prove that he was aware of the presence and character of the substance, and that he was intentionally and consciously in possession of it. See Gillis v. Commonwealth, 215 Va. 298, 301, 208 S.E.2d 768, 771 (1974) ("[t]o establish possession of a controlled substance, it generally is necessary to show that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it").

Relevant to this issue is the fact that Shackleford gave several inconsistent statements. He first told Miers that his aunt was in the hospital but later said that she was at her residence. Then, after removing the firearm and package of cocaine from his bag, hiding them in the taxicab, and exiting the taxicab, he declared to Miers, "you can go ahead and search my bag, there's no drugs or anything in it." However, at the bus terminal, Shackleford would not consent to a search of the bag on the pretext that it contained his aunt's personal items.

Shackleford also asserts that the Commonwealth did not establish that he intended to distribute cocaine. This argument overlooks the fact that a police officer, who

testified as an expert in the use and distribution of narcotics, stated that illegal drugs are routinely packaged in individual bags to facilitate distribution.  The package found in the taxicab contained 14 plastic baggies, each containing cocaine, which, according to the expert, has a street value of approximately $100 to $150 per gram.

As to the conviction for transporting more than one ounce of cocaine into the Commonwealth, Shackleford attacks the testimony of the forensic scientist who tested the substance in the 14 baggies.  Shackleford claims that, since the forensic scientist did not determine what portion of the 194.96 grams of substance was actually cocaine, the Commonwealth failed to establish that he transported the requisite one ounce.  He also challenges the fact that the circuit court took judicial notice of the fact that 194.96 grams is more than one ounce.

Contrary to Shackleford's argument, a conviction under § 18.2-248.01 does not require the Commonwealth's forensic scientist to test each gram of the substance to determine its purity.  That section provides that "it is unlawful for any person to transport into the Commonwealth . . . with intent to sell or distribute one ounce or more of cocaine, coca leaves or any salt, compound, derivative or preparation thereof . . . ."  We agree with the Court of

Appeals that the plain terms of this statute "mandates that the quantity of the mixture—the 'compound' or 'preparation'—rather than the purity of the cocaine in the mixture" is to be used to determine the weight of the substance transported into the Commonwealth. Shackleford, 32 Va. App. at 328, 528 S.E.2d at 134. We also conclude that the circuit court did not err in taking judicial notice of the conversion ratio between grams and ounces. See Ryan v. Commonwealth, 219 Va. 439, 445, 247 S.E.2d 698, 703 (1978) ("[c]ourts may take judicial notice of generally known or easily ascertainable facts").

Finally, on the conviction for possession of the firearm, Shackleford posits that the evidence did not establish that he was in possession of the firearm while also knowingly and intentionally possessing cocaine. He concedes that he was in possession of the firearm once he opened the bag and found the weapon inside, but argues that, after he hid the firearm under the seat of the taxicab, he no longer possessed it. During the brief time of admitted possession, Shackleford claims that he was not simultaneously aware of the character and presence of the cocaine.

Since we have already concluded that the evidence was sufficient to convict Shackleford of possession of cocaine

24

with intent to distribute, the evidence is likewise sufficient to support his conviction for possession of the firearm. Shackleford concedes that he possessed the weapon.

CONCLUSION

For these reasons, we conclude that the Court of Appeals did not err in affirming Shackleford's convictions. Accordingly, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.

JUSTICE KOONTZ, with whom JUSTICE KEENAN joins, dissenting.

I respectfully dissent. I do so because, in my view, the majority effectively usurps for this Court an authority that properly rests exclusively with the General Assembly by altering the meaning of the express language of the statutes pertinent to this appeal. Specifically, in the context of this case the majority expands the meaning of the express language of Code § 16.1-269.1(E) to render meaningless the equally express language of Code § 16.1-269.6(E).

Code § 16.1-269.1(E) provides, in pertinent part, that: "An indictment in the circuit court cures any error or defect <u>in any proceeding held in the juvenile court</u>

25

except with respect to the juvenile's age." (Emphasis added). Code § 16.1-269.6(E) provides that: "Any objection to the jurisdiction of the circuit court pursuant to this article shall be waived if not made before arraignment." (Emphasis added).

Undoubtedly, with regard to an offense committed by a juvenile on or after July 1, 1996, we have held that "an indictment by a grand jury cures any defect or error . . . which has occurred in any juvenile court proceeding" pursuant to Code § 16.1-269.1(E). Dennis Moore v. Commonwealth, 259 Va. 405, 410, 527 S.E.2d 415, 418 (2000). However, that case, unlike the present case, did not involve an appeal pursuant to Code § 16.1-269.4 of a transfer decision by the juvenile court under Code § 16.1-269.1(A). Moreover, in David Moore v. Commonwealth, 259 Va. 431, 527 S.E.2d 406 (2000), we explained that "[t]he plain language of [Code § 16.1-269.6(E)] clearly manifests legislative intent that any defect in the transfer proceedings conducted in the juvenile court as provided in Article 7 is waived such that the circuit court acquires the authority to exercise its subject matter jurisdiction over the offenses charged against the juvenile unless the juvenile raises an objection based on a defect in the juvenile court transfer hearing prior to arraignment in the

26

circuit court." (Additional emphasis added). Id. at 440, 527 S.E.2d at 410-11.

In the present case, Dorian Lee-Kirk Shackleford challenged the jurisdiction of the circuit court based on a defect in the juvenile court transfer hearing and he did so prior to his arraignment in the circuit court in accord with Code § 16.1-269.6(E). The defect created by the lack of the required notice to his father of that transfer hearing is not disputed. Nevertheless, the majority concludes that, notwithstanding the provisions of Code § 16.1-269.6(E), under Code § 16.1-269.1(E) "the indictment cured the defect raised in Shackleford's objection before he made the objection." To support this conclusion the majority reasons that although "Code § 16.1-269.1(E) speaks in terms of curing defects in the proceedings in the juvenile court, an appeal from a transfer decision under Code § 16.1-269.4 is the final step in the transfer process commenced under Code § 16.1-269.1(A)" and that "the legislature intended for an indictment to cure any defects in that entire process." Under this reasoning, for all practical purposes, any objection to the jurisdiction of the circuit court pursuant to Code § 16.1-269.6(E) could never be effective, even though timely asserted, once an indictment has been returned against the juvenile

27

defendant.  Certainly, the legislature did not intend to create a right under Code § 16.1-269.6 without a remedy.[*]

It should be self-evident that the proceeding held in the circuit court on an appeal of a transfer decision is not a "proceeding held in the juvenile court."  Moreover, Code § 16.1-269.1(E) makes no reference to a "final step in the transfer process;" the majority simply adds that language, as it must, in order to support its expanded interpretation of the express terms of this statute.  But, "[c]ourts are not permitted to add language to a statute nor are they 'permitted to accomplish the same result by judicial interpretation.' "  Burlile v. Commonwealth, 261 Va. 501, 511, 544 S.E.2d 360, 365 (2001) (quoting Harbor

---

[*]Code § 16.1-272.1, enacted in 2000, further undermines the majority's conclusion with regard to the legislative intent embodied in Code § 16.1-269.1(E).  This statutes provides, in pertinent part, that:

> In addition to any other curative provisions, waivers, procedural defaults, or requirements for timely objections, including but not limited to those in . . . subsection E of § 16.1-269.1 and subsection E of § 16.1-269.6, any claim of error or defect under this chapter, jurisdictional or otherwise, that is not raised within one year from the date of final judgment of the circuit court or one year from the effective date of this act, whichever is the later, shall not constitute a ground for relief in any judicial proceeding.

If the majority's expanded interpretation of Code § 16.1-269.1(E) is correct, then the inclusion of that Code

Cruises, Inc. v. Commonwealth, 217 Va. 458, 461, 230 S.E.2d 248, 250 (1976)).

In my view, under Code § 16.1-269.1(E) the effect of an indictment in the circuit court is to cure defects in the juvenile proceedings for purposes of establishing the subject matter jurisdiction of the circuit court, and not to divest the circuit court of its authority under Code § 16.1-269.6 to consider objections to and appeals of a transfer decision by the juvenile court made prior to arraignment on that indictment. See David Moore v. Commonwealth, 259 Va. at 437, 527 S.E.2d at 409 (distinguishing between the power of a court to adjudicate a specified class of cases and the authority of a court to exercise that power in a particular case). Where, as here, the record shows that the Commonwealth failed to provide both of Shackleford's parents with notice of the proceedings in the juvenile court as then required by Code §§ 16.1-263 and 16.1-264, Code § 16.1-269.6(E), in addition to the other provisions of Code § 16.1-269.6, provided Shackleford the right to assert that defect in the subsequent proceedings held in the circuit court. Moreover, that defect caused the transfer of jurisdiction

---

section in Code § 16.1-272.1 would have been entirely unnecessary. Clearly the legislature concluded otherwise.

from the juvenile court to the circuit court to be ineffectual and Shackleford's subsequent convictions to be void.  See Baker v. Commonwealth, 258 Va. 1, 2, 516 S.E.2d 219, 220 (1999) (per curiam), aff'g Baker v. Commonwealth, 28 Va. App. 306, 504 S.E.2d 394 (1998).  The circuit court erred in failing to exercise its authority to remand the case to the juvenile court for further proceedings in order to ensure that both of Shackleford's parents were provided with the then required notice of the proceedings against him.

For these reasons, I would reverse Shackleford's convictions and remand the case for further proceedings.  Accordingly, I would not reach the other issues raised by Shackleford in this appeal.