COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Clements and Kelsey
Argued at Salem, Virginia


ALBERT WAYNE SAMPLE

MEMORANDUM OPINION[*] BY
v.      Record No. 2594-02-3        JUDGE D. ARTHUR KELSEY
DECEMBER 9, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GRAYSON COUNTY
J. Colin Campbell, Judge

R. Christopher Munique (Lacy, Campbell & Associates, on brief),
for appellant.

Kathleen B. Martin, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


A jury found Albert Wayne Sample guilty of possession of Oxycodone, a Schedule II

controlled substance, with intent to distribute in violation of Code § 18.2-248(C). On appeal,

Sample contends that the evidence fails, as a matter of law, to prove his intent to distribute beyond a

reasonable doubt. Finding no such error in the verdict, we affirm.

I.

When examining a challenge to the sufficiency of the evidence on appeal, "the evidence

and all reasonable inferences flowing therefrom must be viewed in the light most favorable to the

prevailing party in the trial court." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d

781, 786 (2003) (citations omitted). That principle requires us to "discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Craddock v. Commonwealth, 40 Va. App. 539, 542, 580 S.E.2d 454, 456 (2003) (citations omitted).

On April 22, 2003, a confidential informant told Glenn D. Hyatt, chief investigator for the Grayson County Sheriff's Department, that a car had been stolen in Maryland and would be in the Grayson County area. The informant described the car as a blue Ford Mustang, gave Hyatt three specific locations where he might find it, and stated that the car would contain two bags of Oxycontin.

The next morning, Hyatt spotted a gray Mustang parked at the residence of Mark Martin Spicer, one of the locations provided by the informant. The vehicle had Maryland tags. Hyatt, who was off duty at the time, obtained the license plate number, contacted the sheriff department's dispatcher by cell phone, and asked the dispatcher to run the tags. Based on information on the license plate number, the dispatcher advised Hyatt that the vehicle had been stolen.

Hyatt and three deputies approached the residence and verified the Mustang's VIN. Hyatt testified that "you could tell that the vehicle had been primered" with gray paint. The officers knocked on the door of the residence a number of times with no response. Hyatt then looked inside the vehicle's passenger compartment and found an unmarked, white envelope in the console containing 8 "OC/80" pills and 51 "Percocet/7.5" pills. At this point, Sample came out of the front door of the residence. Sample stated that he had been driving the vehicle and gave Hyatt the keys. Hyatt then placed Sample under arrest for possession of stolen property.

On the way to Hyatt's car, Sample spontaneously stated that all of the property inside the vehicle belonged to him. Hyatt drove Sample to the sheriff's department while the three deputies conducted an inventory search of the vehicle and waited for a tow truck to remove the vehicle

from the residence.  During the inventory, the deputies found a blue, plastic bag in the trunk that contained an unmarked, white envelope with 21 "OC/80" pills and 115 "Percocet/7.5" pills.

Sample went to trial before a jury on an indictment alleging possession of Oxycodone, a Schedule II controlled substance, with intent to distribute in violation of Code § 18.2-248(C).  At trial, the Commonwealth presented a certificate of analysis from the state forensics laboratory demonstrating that all but four of the pills contained Oxycodone.  Testifying as an expert witness, Hyatt explained that Oxycodone is a "major abused drug" in the illegal narcotics trade, with the Percocet tablets selling for $10 per pill and the Oxycontin "OC/80" tablets selling for $80 a pill.  The total street value of the Oxycodone pills found in the Mustang, Hyatt estimated, totaled $3,980.  Hyatt also testified that he read Sample his <u>Miranda</u> rights and took a statement from him.  In it, Sample specifically denied possessing any of the narcotic tablets in the Mustang.  When presented with a written statement incorporating his answers, however, Sample refused to sign it.

In addition, the Commonwealth presented the testimony of Troy Schroeder, who stated that on April 22 Sample and two other men had visited him.  They arrived in a dark colored Mustang driven by Sample.  During the visit, the men put the car in Schroeder's garage and painted it primer gray.  Schroeder assumed the vehicle was Sample's.

After the trial court denied Sample's motion to strike the PWID charge, Sample presented testimony from Spicer, the owner of the residence.  Spicer confirmed that he accompanied Sample to Schroeder's house in a blue Mustang and that they painted the car gray.  He stated that Sample drove the vehicle, Spicer sat in the passenger seat and Spicer's brother sat in the back seat.  Spicer claimed that his cousin, Ronald Jones, may have had access to the stolen car during the early morning hours of April 23.  According to Spicer, Sample stayed at the residence with him on the night of April 22 and parked the Mustang in his driveway that night.  Spicer

hypothesized that his cousin, Ronald Jones, who sometimes visits in the middle of the night, might have gotten drunk and slept in the Mustang. Spicer thought he had heard a car door shut during the early morning hours, but he never saw Jones in the Mustang.

In closing argument, Sample's counsel argued that the defendant did not possess the drugs. "I submit to you," counsel argued, "those drugs could have been put there by Mr. Jones." Sample, his counsel argued, "didn't know there was [sic] drugs in that car." Sample's counsel also contended that no evidence suggested that whoever possessed the drugs did so with an intent to distribute. Finding neither argument persuasive, the jury found Sample guilty of possession with intent to distribute.

During the sentencing phase of the bifurcated trial, Sample took the stand in his own defense. He claimed he possessed all of the pills lawfully, having been prescribed them for a back injury. "I was on prescription pain medications," Sample testified, "until I was arrested for this crime." He relied on the medicines solely for "pain management," he explained, not as a means to "get high or to have fun or to sell and make money." Sample, however, produced no copies of the prescriptions; nor did he provide any testimony from any physician corroborating his claim. The jury recommended, and the trial judge imposed, a twenty-year prison sentence and a $250,000 fine. Sample now appeals to this Court, claiming only that the intent-to-distribute element of his conviction lacks a sufficient factual basis.

II.

When faced with a challenge to the sufficiency of the evidence, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence" to support it. Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (citations omitted); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*).

On appeal from a jury verdict, Code § 8.01-680 requires that "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make. We let the decision stand unless we conclude no rational juror could have reached that decision." Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*), aff'd, 2003 Va. LEXIS 95 (Va. Oct. 31, 2003). Under this standard, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted).

We must instead ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319 (emphasis in original and internal quotation marks omitted)); see also Hoambrecker v. Commonwealth, 13 Va. App. 511, 514, 412 S.E.2d 729, 731 (1992) (observing that question on appeal is whether "a rational trier of fact could have found the essential elements" of the convicted offense). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319).

To convict a defendant on the charge of possession of drugs with intent to distribute, the Commonwealth must prove that the defendant possessed illegal drugs and that he did so with the intent to distribute those drugs to others. See Code § 18.2-248(C); Christian v. Commonwealth, 33 Va. App. 704, 716, 536 S.E.2d 477, 483 (2000) (*en banc*). On appeal, Sample does not contest that he possessed the drugs — only that he possessed them with an intent to distribute.

Given the "difficulty of proving intent directly, the Commonwealth may (and often must) rely instead on circumstantial evidence." Craddock, 40 Va. App. at 553, 580 S.E.2d at 461; see also Askew v. Commonwealth, 40 Va. App. 104, 108, 578 S.E.2d 58, 60 (2003).

- 5 -

"Circumstantial proof of a defendant's intent includes the quantity of the drugs discovered, the packaging of the drugs, and the presence or absence of drug paraphernalia." Askew, 40 Va. App. at 109, 578 S.E.2d at 61 (quoting Shackleford v. Commonwealth, 32 Va. App. 307, 327, 528 S.E.2d 123, 133 (2000) (citations omitted), aff'd, 262 Va. 196, 547 S.E.2d 899 (2001)).

These indicia of intent, however, must be contexualized to the specific drug at issue. For example, with non-prescription drugs like crack cocaine, the packaging factor focuses on whether the evidence involves multiple, small, retail-sized bags containing individual rocks (usually possessed by street-level distributors) or conspicuously large, wholesale-sized blocks of precut crack (typically possessed by dealers higher up the chain of distribution). See generally Roger D. Groot, Criminal Offenses & Defenses in Virginia 144-45 (4th ed. 1998). For illegally distributed prescription drugs, however, the packaging factor takes into account the presence or absence of pharmacy pill bottles or other forms of pharmaceutical packaging. A properly labeled prescription bottle may support an exculpatory inference of personal use. On the other hand, the possession of large amounts of prescription narcotics in unmarked, unlabeled envelopes or bags may give rise to an inculpatory inference which, coupled with other incriminating evidence, may prove an intent to distribute.

In addition, the amount of drugs seized from an individual can itself be a dispositive factor. See, e.g., Hunter v. Commonwealth, 213 Va. 569, 570, 193 S.E.2d 779, 780 (1973) (observing that quantity "is a circumstance which, standing alone, may be sufficient to support a finding of intent to distribute"). "'Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it.'" Askew, 40 Va. App. at 109, 578 S.E.2d at 60-61 (quoting Gregory v. Commonwealth, 22 Va. App. 100, 110, 468 S.E.2d 117, 122 (1996) (finding sufficient evidence of intent to distribute based on possession of seven small bags containing a total of 3.7 grams of cocaine), and Iglesias v.

Commonwealth, 7 Va. App. 93, 110, 372 S.E.2d 170, 180 (1988) (*en banc*)). The amount may be quantified in terms of weight, number of units, and street value. See, e.g., Shackleford, 32 Va. App. at 327, 528 S.E.2d at 133.

The totality of the circumstances in this case supports the rationality of the jury's verdict on the intent-to-distribute element of Sample's conviction. Sample had driven a reportedly stolen car to Grayson County and then repainted the vehicle in an effort at evasion. In the car, Sample carried nearly $4,000 worth of addictive prescription narcotics. The 195 tablets were not packaged in prescription pill bottles or pharmacy bags, but divided between two unmarked envelopes. The quantity and street-value of the narcotics, coupled with their non-pharmaceutical method of packaging, provide a sufficient factual basis for the jury's finding that Sample possessed the drugs with an intent to distribute.

Despite the incriminating evidence against him, however, Sample contends the jury arbitrarily disregarded the reasonable hypothesis of innocence that he "possessed the *medications* for his own personal use."[1] We disagree. Sample's own evidence excluded this possibility. His only witness, Mark Spicer, asserted that the drugs likely belonged to his cousin and were somehow planted in the parked vehicle during the night. In his closing argument, Sample's counsel argued this hypothesis and never once intimated the factually inconsistent assertion that Sample possessed the prescription pills for medicinal purposes. Sample, his counsel argued,

---

[1] The dissent appears to rest its conclusion on the hypothesis of innocence (on the intent-to-distribute element of the charge) that Sample illegally obtained and used these narcotics outside the parameters of a physician prescribed regime of medication. Sample, however, never argued that hypothesis in the trial court. Indeed, his own testimony during the penalty phase directly asserted the opposite by claiming he obtained the medicines pursuant to a prescription for back pain and used these medicines in accord with the recommended dosage for "pain management." He specifically denied unlawfully obtaining or using the pills to "get high." Sample did not change course on appeal. Here, too, he has argued only the hypothesis that he possessed and used the pills as "medications." This disconnect in the specific hypothesis under review accounts for the dissent's inability to find a "basis in logic" for the inferences available from the non-pharmaceutical packaging used to store the medicines. *Ante*, at 14 n.5.

- 7 -

"didn't know there was [sic] drugs in that car." Having taken this position at trial, he cannot now

assert on appeal a new hypothesis in an effort to vacate his conviction. On appeal, "the issue of

exclusion of reasonable theories of innocence is limited to those theories advanced by the

accused at trial." Hudson, 265 Va. at 514, 578 S.E.2d at 786.

Even if Sample had asserted the personal-use hypothesis at trial, the jury would have had

ample reason to reject it. The Commonwealth "need only exclude reasonable hypotheses of

innocence that flow from the evidence, not those that spring from the imagination of the

defendant." Welshman v. Commonwealth, 28 Va. App. 20, 36, 502 S.E.2d 122, 130 (1998) (*en

banc*) (citations and internal quotation marks omitted); see also Agee v. Commonwealth, 40

Va. App. 123, 128, 578 S.E.2d 68, 70 (2003). No evidence in the guilt phase of the case

suggested that Sample had a physical condition warranting the use of such powerful pain

medication or had a prior prescription from a physician. To the contrary, in his post-arrest

statement to police, Sample denied possessing the narcotics for any reason. Implicit in this

assertion is that he was not using the drugs for medicinal purposes. The jury was at liberty to

disbelieve Sample's outright denial of possession of the narcotics, but nonetheless accept it as a

half-truth — an implicit admission that, at any rate, he did not possess the pills for medical

reasons.[2]

Under settled principles, whether an alternative hypothesis of innocence is reasonable is a

"question of fact." Pease, 39 Va. App. at 355, 573 S.E.2d at 278. A factfinder's rejection of a

---

[2] The factfinder need not decide between rejecting or accepting a witness's testimony in full, but may find it credible in part and incredible in part. Montague v. Commonwealth, 40 Va. App. 430, 436, 579 S.E.2d 667, 669 (2003); see also Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986) (recognizing that jurors "have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true. In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime."); Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991) (noting that a jury is not required to "accept *in toto* an accused's statement, but may rely on it in whole, in part, or reject it completely").

hypothesis of innocence "is binding on appeal unless plainly wrong." <u>Christian</u>, 33 Va. App. at 715, 536 S.E.2d at 483 (citation omitted). We examine the reasonableness of the hypothesis not in an abstract sense, but at the level of specificity shown by the unique facts and circumstances of the case. <u>See Hudson</u>, 265 Va. at 516, 578 S.E.2d at 787. The question then becomes whether a "rational" factfinder, facing the evidence before it, could have reached the decision that it did. <u>Pease</u>, 39 Va. App. at 355, 573 S.E.2d at 278; <u>see also Hudson</u>, 265 Va. at 513, 578 S.E.2d at 785-86 (observing that the issue is whether a "reasonable" factfinder could have rejected the hypothesis of innocence).[3]

Based upon the record before us, we find that the jury's finding of guilt beyond a reasonable doubt rests on a sufficient foundation of inculpatory evidence. The rationality of the verdict extends to the intent-to-distribute element of the conviction, as well as the jury's rejection of any reasonable hypotheses of innocence that could be derived from the evidence.

III.

Finding the evidence of guilt sufficient to support the intent-to-distribute element of Code § 18.2-248(C), we affirm Sample's conviction.

<u>Affirmed.</u>

---

[3] Relying on <u>Hudak v. Commonwealth</u>, 19 Va. App. 260, 450 S.E.2d 769 (1994), the dissent contends that the conviction cannot stand absent expert testimony. <u>Hudak</u> involved a conspiracy charge, however, and the question on appeal dealt only with the defendant's knowledge of his alleged co-conspirator's drug distribution activities. <u>Hudak</u> did not involve a possession-with-intent charge and has never been cited as providing guidance for the use or disuse of expert testimony in such cases.

Clements, J., dissenting.

On appeal, Sample does not dispute the finding that he unlawfully possessed the Oxycodone pills that are the subject of this case. He contends, rather, that the Commonwealth failed to meet its burden of proving he intended to distribute the Oxycodone pills because no expert testimony was offered to show that the quantity and packaging of those pills was consistent with distribution and inconsistent with personal use. Such expert testimony was necessary, he argues, because the facts and circumstances regarding the illegal use and distribution of Oxycodone are not within the common knowledge or experience of the average lay juror. I agree. I would hold, therefore, that the evidence was insufficient for the jury to convict Sample of possession of Oxycodone with intent to distribute, in violation of Code § 18.2-248(C). Accordingly, I respectfully dissent from the majority's opinion.

To sustain Sample's conviction in this case, the Commonwealth had the burden of proving beyond a reasonable doubt that Sample intended to distribute the Oxycodone pills found in his possession. See Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988) ("Where an offense consists of an act combined with a particular intent, proof of the intent is essential to the conviction."); Code § 18.2-248(A), (C). "Because direct proof of intent [to distribute drugs] is often impossible, it [usually] must be shown by circumstantial evidence." Servis, 6 Va. App. at 524, 371 S.E.2d at 165. Circumstantial evidence is sufficient to sustain a conviction if it excludes all "reasonable hypotheses that flow from the evidence." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

"Circumstantial proof of a defendant's intent includes the quantity of the drugs discovered [and] the packaging of the drugs . . . ." Shackleford v. Commonwealth, 32 Va. App. 307, 327, 528 S.E.2d 123, 133 (2000), aff'd, 262 Va. 196, 547 S.E.2d 899 (2001). "[P]ossession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to

establish an intent to distribute it." Monroe v. Commonwealth, 4 Va. App. 154, 156, 355 S.E.2d 336, 337 (1987). Likewise, possession of drugs packaged in a manner consistent with distribution and inconsistent with personal use may indicate an intent to distribute the drugs. See Shackleford, 32 Va. App. at 327, 528 S.E.2d at 133; Monroe, 4 Va. App. at 156, 355 S.E.2d at 337 (noting that, "even if the substance is packaged for distribution, there must be additional evidence to preclude the inference that it was . . . in the packaged form for personal use rather than being held in that fashion for distribution"). "Expert testimony, usually that of a police officer familiar with narcotics, is routinely offered to prove the significance of the [quantity] and packaging of drugs regarding whether it is for personal use." Shackleford, 32 Va. App. at 327, 528 S.E.2d at 133.

Here, there was no direct evidence presented at trial that Sample distributed or intended to distribute the Oxycodone pills found in his possession. As relevant to this appeal, the circumstantial evidence presented by the Commonwealth established that Sample illegally possessed a total of 29 "OC/80" pills and 166 "Percocet/7.5" pills. Of those 195 pills, all but 4 contained Oxycodone, a Schedule II controlled substance. The pills were discovered inside two unmarked, white envelopes in the car driven by Sample. One of the envelopes was found in the car's front console, and the other was found in the car's trunk inside a plastic bag containing clothes and other personal items. The envelope in the console was open and contained 8 "OC/80" pills and 51 "Percocet/7.5" pills. The envelope in the trunk was sealed and contained 21 "OC/80" pills and 115 "Percocet/7.5" pills. Investigator Hyatt, who qualified as an expert witness, testified that Oxycodone had become a "major abused drug" in the "last few years" and that the total "street value" of the pills found in the car was $3,980.[4]

---

[4] The majority also finds the following evidence relevant to the outcome of this appeal: (1) that the car in which the Oxycodone pills were found had been reportedly stolen and repainted; (2) that, following the discovery of those pills, Sample told Investigator Hyatt they

Investigator Hyatt, however, did not testify that the quantity and packaging of the Oxycodone pills in Sample's possession were consistent with distribution and inconsistent with personal use. Indeed, the Commonwealth offered no evidence regarding the significance of the quantity or packaging of the Oxycodone pills.

The dispositive question, then, is whether the circumstantial evidence presented by the Commonwealth would permit the jury to reasonably infer, without expert testimony, that Sample intended to distribute the Oxycodone pills he illegally possessed. Expert testimony is necessary when the jury

> "is confronted with issues which require scientific or specialized knowledge or experience in order to be properly understood, and which cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life."

Compton v. Commonwealth, 219 Va. 716, 726, 250 S.E.2d 749, 755-56 (1979) (quoting 31 Am. Jur.2d Expert and Opinion Evidence § 16 (1967) (footnote omitted)). Conversely, "[e]xpert testimony is not required, indeed is inadmissible, in cases in which the facts and circumstances are within the common understanding and experience of the average[] lay juror." Nelson v. Commonwealth, 235 Va. 228, 236, 368 S.E.2d 239, 244-45 (1988).

We have previously recognized the need for expert testimony in cases such as this, because a trier of fact's "'common experience' teaches little or nothing" on the subject of the "methodology used in selling controlled substances." Morton v. Commonwealth, 13 Va. App. 6, 11, 408 S.E.2d 583, 585 (1991). In Hudak v. Commonwealth, 19 Va. App. 260, 262-63, 450 S.E.2d 769, 771 (1994), for example, we found the issues with which the jury was confronted

---

were not his; and (3) that Sample's sole witness, Mark Spicer, hypothesized that the drugs found in the car might be his cousin's. While this evidence may have been relevant at trial to the question of whether Sample illegally possessed the Oxycodone pills, I believe it has little, if any, bearing on the intent-to-distribute issue before us on appeal.

relating to the consumption and distribution of LSD were beyond the jury's realm of common knowledge and experience. Because the Commonwealth offered no expert testimony on those issues to assist the jury, we found the evidence insufficient to support the appellant's conviction for conspiracy to distribute LSD. Id. at 262-63, 450 S.E.2d at 770-71. Rejecting the Commonwealth's argument that the "appellant knew or should have known that [the alleged co-conspirator] was redistributing LSD because [the] appellant sold [the alleged co-conspirator] 2,000 hits of LSD on one occasion," we held as follows:

> [N]o testimony was introduced to prove [the alleged co-conspirator's] level of personal consumption, how often [the alleged co-conspirator] consumed LSD, how powerful one LSD "dose" is, [or] how long unused LSD can be stored before it loses it potency . . . . Under the facts of this case, without more compelling evidence in the record, expert testimony on these issues was necessary to establish that [the] appellant knew or should have known that [the alleged co-conspirator] was distributing LSD. Without any expert testimony from the Commonwealth as to these (and other related) issues, the jury was without evidence to conclude that the 2,000 hits of LSD were not for [the alleged co-conspirator's] personal use.

Id. at 262-63, 450 S.E.2d at 771.

Plainly, the use and distribution of Oxycodone are matters that lie outside the range of the common knowledge and experience of an average lay juror, particularly when, as here, the use and distribution involved are purportedly illegal. In this case, the Commonwealth presented no evidence regarding Sample's personal consumption of Oxycodone. Likewise, the Commonwealth presented no expert testimony regarding the potency or typical dosage of the Oxycodone pills found in Sample's possession, the quantity of Oxycodone pills normally consumed or possessed by one illegally using that controlled substance, or the respective packaging methods typically used by those who illegally possess Oxycodone pills for their own use and those who illegally distribute Oxycodone pills to others. Without expert testimony to

assist it in understanding those issues, the jury could only speculate as to the significance of the quantity and packaging of the Oxycodone pills in this case.[5]

I conclude, therefore, that expert testimony was required to assist the jury understand the significance, if any, of the quantity and packaging of the Oxycodone pills found in Sample's possession in determining whether Sample intended to distribute the pills or retain them for personal use. The jury could not reasonably infer from the evidence presented that the quantity of Oxycodone pills illegally possessed by Sample and the packaging of those pills were consistent with distribution and inconsistent with personal use. "Where an inference supporting guilt is no more likely to arise from a proven fact than one favoring innocence, the inference of guilt is impermissible." Morton, 13 Va. App. at 11, 408 S.E.2d at 586.

For these reasons, I would conclude the Commonwealth failed to prove beyond a reasonable doubt that Sample had the requisite intent to distribute the Oxycodone pills he illegally possessed. See Patterson v. Commonwealth, 215 Va. 698, 699, 213 S.E.2d 752, 753 (1975) (holding that a finding of intent may not "be based upon surmise or speculation"). I

---

[5] Notwithstanding the absence of expert testimony on the subject of packaging, the majority concludes that the fact Oxycodone pills were found in plain, unmarked, unlabeled envelopes, rather than properly labeled prescription pill bottles or pharmacy bags, supports the inference that Sample intended to distribute the Oxycodone pills. Such a conclusion is amiss, in my view, not only because, as I noted above, it has no basis in the common knowledge and experience of an ordinary juror, but also because it has no basis in logic. Again, the issue here is not whether Sample illegally possessed the Oxycodone pills, but whether, having illegal possession of the pills, he intended to distribute them. Thus, while I agree with the majority's opinion that "[a] properly labeled prescription bottle may support an exculpatory inference of personal use," I do not believe it necessarily follows that keeping illegally possessed Oxycodone pills in unmarked, unlabeled envelopes is indicative of the possessor's intent to distribute those drugs rather than use them personally. Plainly, one who illegally obtains Oxycodone pills for his or her own use (e.g., by theft, purchase from an unauthorized distributor, or with an invalid prescription) would not normally have the wherewithal to then place those pills in a properly labeled prescription bottle or pharmacy bag.

would hold, therefore, that the evidence presented at trial was insufficient, as a matter of law, to sustain Sample's conviction.[6]

Accordingly, I would reverse Sample's conviction for possession of Oxycodone, a Schedule II controlled substance, with intent to distribute, in violation of Code § 18.2-248(C), and remand the case for further proceedings, if the Commonwealth be so advised.

---

[6] In reaching this conclusion, I am not suggesting that expert testimony is required in every case where the accused's intent to distribute is at issue. Here, however, as discussed above, the particular facts of this case make such testimony necessary.