COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Humphreys and Kelsey
Argued at Richmond, Virginia


JOHN TERRY DUGGER
                                        OPINION BY
v.    Record No. 1708-02-2        JUDGE D. ARTHUR KELSEY
                                         MAY 20, 2003
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                    Michael C. Allen, Judge

          Linwood T. Wells, III, for appellant.

          Kathleen B. Martin, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     John Terry Dugger, the appellant, claims the jury erred when

it convicted him of driving under the influence of alcohol (second

or subsequent offense) in violation of Code §§ 18.2-266 and

18.2-270(B), as well as operating a vehicle as an habitual

offender in violation of Code § 46.2-357.  Appellant admits that,

while sitting in the passenger seat of a vehicle, he forcibly took

control of the steering wheel from the driver and caused the

vehicle to go off the road and into a guardrail.  This momentary

exercise of control, he argues, falls outside the scope of the DUI

and habitual offender statutes as a matter of law.  We disagree

and affirm the trial court.

On appeal, we review the evidence "in the light most favorable to the Commonwealth." Morrisette v. Commonwealth, 264 Va. 386, 389, 569 S.E.2d 47, 50 (2002). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Holsapple v. Commonwealth, 39 Va. App. 522, 528, 574 S.E.2d 756, 758-59 (2003) (en banc) (citation omitted); see also Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

After attending a funeral on September 28, 2001, appellant and several of his family members visited the home of Marlena Baker, his sister, in Petersburg. Around 10:00 p.m. that evening, appellant and two of his brothers borrowed a car belonging to another of his sisters, Pamela Dugger. Though the men were to return shortly after getting gas for Pamela's car, they did not arrive back at the house until 1:00 or 2:00 a.m. the following morning. The men had been drinking and appellant, a passenger in the car, was intoxicated.

"Very angry" with her brothers, Pamela and appellant were still arguing about the incident when they began the drive back to Richmond in Pamela's car at 3:00 a.m. Pamela was behind the wheel, with appellant in the right front passenger seat. As the

-

two drove north along Interstate 95, the argument "heated up." Appellant got "real excited" and "grabbed the wheel" of the car. Pamela's first thought was that her brother was "trying to harm us."  Appellant, steering from the passenger seat, caused the car to veer off the interstate and into a guardrail.

Virginia State Trooper Bruce Thomas arrived at the scene about five minutes later.  Thomas initially questioned Pamela, who reported that her brother caused the accident.  Thomas then approached appellant, who was handcuffed and seated in a police car, cursing loudly.  Appellant's "eyes were glassy" and a "strong odor of alcohol" surrounded him.  He admitted that "he'd been drinking for hours" and was "drunk."  A breath test later revealed his blood alcohol level to be .15%, almost twice the legal limit.

Appellant initially explained to Trooper Thomas that he had been "fighting" with his sister and had "grabbed the wheel and caused her to wreck."  As the night progressed, however, appellant's version of the events changed.  He later told Thomas that, as a mere "passenger in a car," he did nothing to "cause the accident."  Appellant also said, at one point, that he had been "waving his finger in her face" and may have accidentally "hit her hand on the wheel."  Finally, before the magistrate, appellant claimed to be "in the back seat asleep at the time of the accident."

-

At trial, appellant offered yet another version of what happened: He took over the steering wheel to avoid an imminent collision with a tractor-trailer truck that his sister had not noticed. Appellant conceded that he had not given this explanation to Trooper Thomas, but claimed he chose not to do so because the officer treated him like a "criminal" and failed to show him proper "respect."

At trial, Pamela attempted to corroborate in part her brother's latest version. She admitted, however, that she had seen several trucks that night, but not the one her brother claimed he saw just before taking over the steering wheel. She also said she may have been "swerving" in and out of her lane prior to the incident, implying that this justified her brother's intervention.

Without objection, the Commonwealth introduced into evidence a prior DUI conviction, two habitual offender adjudication orders, a misdemeanor conviction for driving in violation of the habitual offender orders, and two convictions for driving on a suspended license.

At the close of the case in chief and again after the presentation of all the evidence, appellant moved to strike on the ground that he had not operated the vehicle within the meaning of the DUI and habitual offender statutes. The trial court took both motions under advisement, noting that the evidence showed appellant had seized the steering wheel and had

-

thereby directed the "mode of progress of the vehicle, if you will, by his actions."

The jury returned a verdict of guilty on both charges. The jury recommended a thirty-day sentence for the DUI (second or subsequent offense) and a one-year sentence for the habitual offender conviction. Appellant moved the trial court to set aside the verdicts, which the court also took under advisement. At a later sentencing hearing, the trial court denied the motion to set aside the verdicts, imposed the thirty-day DUI sentence, and suspended the one-year prison term on the habitual offender conviction.

## II.

Appellant argues that his momentary, but deliberate, assertion of physical control over his sister's vehicle does not fall within the scope of the DUI and habitual offender statutes as a matter of law. We disagree, finding that the trial court correctly determined the issue to be one of fact for the jury.

The DUI statute makes it "unlawful for any person to drive or operate" a vehicle while intoxicated. Code § 18.2-266. The habitual offender statute makes it "unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle" while his license remains revoked. Code § 46.2-357(A).

-

Code § 46.2-100 defines the terms operator and driver to include "every person" who "drives or is in actual physical control" of a vehicle.  This statutory definition applies to the habitual offender statute.  <u>Rosenbaum v. Commonwealth</u>, 12 Va. App. 61, 63, 402 S.E.2d 498, 499-500 (1991).  And, while not controlling, <u>Reynolds v. City of Virginia Beach</u>, 31 Va. App. 629, 631, 525 S.E.2d 65, 66 (2000), Code § 46.2-100's statutory definition serves as a valuable interpretative guide to the DUI statute, <u>Stevenson v. City of Falls Church</u>, 243 Va. 434, 437, 416 S.E.2d 435, 437 (1992) (relying on former Code § 46.1-1(17), predecessor of Code § 46.2-100, for interpreting DUI statute); <u>Leake v. Commonwealth</u>, 27 Va. App. 101, 108, 497 S.E.2d 522, 526 (1998).

Under this standard, for example, we have held that operating a vehicle does not necessarily require "moving the vehicle from one place to another."  <u>Keesee v. Commonwealth</u>, 32 Va. App. 263, 268, 527 S.E.2d 473, 476 (2000) (driver behind wheel, key in ignition, engine not running, but vehicle in gear and one taillight illuminated).  Nor does it mean the vehicle's engine must be running.  <u>Propst v. Commonwealth</u>, 24 Va. App. 791, 794-95, 485 S.E.2d 657, 659 (1997) (sitting behind the steering wheel of vehicle stopped in an intersection, with keys in the ignition, headlights on, but engine off constituted "operating"); <u>see</u> <u>also</u> <u>Leake</u>, 27 Va. App. at 108, 497 S.E.2d at

-

526 ("operating" found when driver was standing on the road, but leaning into parked, running car).

We have never addressed whether a passenger who forcibly seizes control of the steering wheel of a moving vehicle exercises sufficient control to fall within the scope of the DUI and habitual offender statutes as a matter of law. To answer this question, we begin with the premise that a statute should be construed to "promote the end for which it was enacted, if such an interpretation can reasonably be made from the language used." Alger v. Commonwealth, 40 Va. App. 89, 93, 578 S.E.2d 51, 53 (2003) (quoting Mayhew v. Commonwealth, 20 Va. App. 484, 489, 458 S.E.2d 305, 307 (1995)) (internal quotation marks omitted). "Thus, a statute should be read to give reasonable effect to the words used and to promote the ability of the enactment to remedy the mischief at which it is directed." Id.

While we will strictly construe a penal statute to resolve any "ambiguity or reasonable doubt as to its meaning" in the accused's favor, that does not mean the accused "is entitled to a favorable result based upon an unreasonably restrictive interpretation of the statute." Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979) (citations omitted); see also Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002); McCray v. Commonwealth, 37 Va. App. 202, 204, 556 S.E.2d 50, 51 (2001).

-

Guided by these interpretative principles, the mischief addressed by the DUI statute is the risk of harm posed by vehicles under the control of intoxicated individuals.  Whether that risk comes from an inebriated passenger (who forcibly takes control of the steering wheel) or from a drunk driver should not matter.  The brevity of actual control likewise does not place the risk of harm outside the intended scope of the statute.  See In re Queen T., 14 Cal. App. 4th 1143, 1144-45, 17 Cal. Rptr. 2d 922, 923 (1993) (a passenger "steering a vehicle, without controlling the accelerator or brakes" may be deemed a driver under DUI statute); Dep't of Transp., Bureau of Driver Licensing v. Hoover, 637 A.2d 721, 723 (Pa. Commw. Ct. 1994) (a passenger "grabbing the steering wheel" operates the vehicle for DUI purposes).  We view the habitual offender statute no differently.  Here too, the mischief addressed by that statute does not exclude, as a matter of law, brief exercises of physical control over a vehicle's operation.[1]

In this case, even though appellant had only momentary control over his sister's vehicle, he nonetheless managed to steer it off the interstate and into a guardrail.  True, appellant claimed he did so to avoid an imminent accident with a

---

[1] For similar policy reasons, the legislature abrogated the common law doctrine of necessity as a defense to an habitual offender charge.  See Long v. Commonwealth, 23 Va. App. 537, 543-44, 478 S.E.2d 324, 326-37 (1996).

-

truck — one his sister, the driver, testified she never saw. The jury was entitled to disbelieve appellant's self-serving testimony and accept his sister's initial reaction that he "grabbed" the wheel in an irrational effort "to harm" them.[2]

In short, for purposes of the DUI and habitual offender statutes, appellant exercised sufficient control over the vehicle to support convictions under both statutes. By forcibly taking the steering over from the driver, appellant manipulated perhaps the most fundamental feature of a moving vehicle — the direction in which it would travel. That deliberate act placed him in actual physical control of the vehicle.

### III.

Neither the jury's guilty verdicts nor the trial court's refusal to set them aside constituted error as a matter of law. We thus affirm appellant's conviction for driving under the influence of alcohol (second or subsequent offense) in violation

---

[2] A fact finder may discount an accused's self-serving explanation as a mere effort at "lying to conceal his guilt." Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001); see also Mughrabi v. Commonwealth, 38 Va. App. 538, 548, 567 S.E.2d 542, 546 (2002); Morrison v. Commonwealth, 37 Va. App. 273, 284, 557 S.E.2d 724, 730 (2002); Dowden v. Commonwealth, 260 Va. 459, 469, 536 S.E.2d 437, 442 (2000); Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981). "A defendant's false statements are probative to show he is trying to conceal his guilt, and thus is evidence of his guilt." Emmett v. Commonwealth, 264 Va. 364, 372, 569 S.E.2d 39, 45 (2002) (quoting in parenthetical from Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991)).

-

of Code §§ 18.2-266 and 18.2-270(B), as well as operating a

vehicle as an habitual offender in violation of Code § 46.2-357.

<u>Affirmed</u>.