COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Clements and Kelsey
Argued at Richmond, Virginia


CLIFFORD HENRY MENEFEE, III
                                           MEMORANDUM OPINION[*] BY
v.      Record No. 3188-02-2               JUDGE D. ARTHUR KELSEY
                                           FEBRUARY 17, 2004
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ORANGE COUNTY
                         Daniel R. Bouton, Judge

       John R. Maus for appellant.

       Margaret W. Reed, Assistant Attorney General (Jerry W. Kilgore,
       Attorney General, on brief), for appellee.


       The appellant, Clifford H. Menefee, argues that the trial court lacked sufficient evidence

to find him guilty beyond a reasonable doubt of burglary under Code § 18.2-91.  Finding the

evidence sufficient to support the conviction, we affirm.

                                            I.

       On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

That principle requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences that may be drawn therefrom."  Kelly v. Commonwealth, 41 Va. App. 250,

254, 584 S.E.2d 444, 446 (2003) (*en banc*) (citation omitted).

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On the evening of July 3, 2001, Tonya Hovey and her two young daughters fell asleep while watching television in the living room of their apartment. Before falling asleep, Hovey closed and locked all of the windows and doors to the apartment, with the exception of the front door, which she closed but forgot to lock. Reclined on her couch, Hovey fell asleep clothed in only a t-shirt and underwear, with a blanket covering her body. Her daughters slept next to her. Her one-year-old son slept in his crib in an adjacent bedroom.

Hovey awoke shortly before midnight, sensing that there was "someone looking at me." Hovey looked up and saw Menefee "leaning over the back of my couch at waist line." He was "standing over top" of Hovey with not "much distance" between them. Smelling and appearing as if he had been drinking, Menefee asked her "are you going to let me eat that thing?" There was no food near her. Hovey interpreted Menefee's statement as a request to perform oral sex. "No," Hovey replied.

Hovey asked Menefee how he entered her apartment. Menefee claimed that he entered the front door only after Hovey "had gotten up and let him in." That's "not true," Hovey responded. Menefee then changed his story and claimed Hovey "hollered" to him to "come in." After Hovey refuted that assertion, Menefee said, "well somebody did."

Hovey demanded to know how long Menefee had been in her apartment. Twenty minutes, he replied. He then asserted that she "had told him to come in and sit down and wait for [her] children to go to sleep, and that [she] would be with him." Hovey then told Menefee that she "was going to call the police." She also said she "worked for the sheriff's office" and knew that "rape was not something that they considered lightly." Menefee left. Hovey checked on her sleeping children and then called the police.

Officer Randy Burnett of the Town of Orange Police Department interviewed Menefee shortly after he returned to his apartment. Menefee first said he had been inside his own

- 2 -

apartment "all night long." Admitting that he was drunk, Menefee changed his story and told Burnett that "he'd gone out earlier in the evening" and had stopped to visit a friend at Oakbrook Apartments. Continuing, Menefee then claimed that he "stopped at two apartments and then he had stopped at three apartments." Upon additional questioning, Menefee admitted that the third apartment he visited was Hovey's. After Burnett had Hovey identify Menefee, Burnett brought Menefee to the police station and placed him under arrest for statutory burglary.

At the police station, Menefee continued to give inconsistent versions of what happened that night. Menefee again asserted that he had been invited into Hovey's apartment. He claimed he entered the apartment and found Hovey and her children asleep. He watched them for "ten minutes" before Hovey "jumped up and asked him what he was doing there." According to Menefee, Hovey told him her "daughter must have told [him] to come in." Menefee then, "without being prompted by a question" by Officer Burnett, spontaneously added, "I didn't touch her." During further questioning, Menefee claimed Hovey "woke up" just as he "got up to leave." He then explained that he had not "pre-planned" what he was going to do, but "just took a chance."

At trial, Hovey testified that she had seen Menefee around the apartment complex for "about two years or so." Menefee had never been a guest at her apartment, Hovey said, nor was he invited on the night in question. During that two-year period, Menefee had verbally harassed Hovey by "holler[ing] out" comments about her "butt" or "legs" or "something of that nature." "He was constantly doing it," she explained. She never said anything in reply. Once while sunbathing at a community pool, Hovey observed Menefee directing a "lewd tongue gesture" toward her, which she interpreted as a reference to "oral sex." Hovey also explained that she would have found any touching by Menefee to be "very offensive."

Menefee took the stand at trial and testified that he knocked on Hovey's door and heard a woman's "voice" telling him to "come in." He entered the apartment and found Hovey and her daughters asleep. He did not know where the voice came from. He admitted to being "intoxicated" and having a "bipolar" mental condition that causes him to hear "voices" urging him to "do dumb stuff like to hurt somebody." During this particular time frame, he claimed, he was experiencing "mental trauma" but did not hear "that kind of voice that night."

Menefee also testified that Hovey "jumped straight up in the air" when she first saw him. After she ordered him out of her apartment, Menefee said he concluded, "maybe, you know, well, I was wrong" about being invited in, so he left. The whole encounter lasted only "a few minutes," he claimed. As for the crude remark about oral sex, Menefee explained: "I'm not really sure if I said that," but he "could have." And even if he did say it, Menefee claimed, "I don't know what I would have been talking about."

On cross-examination, Menefee testified he could not recall telling Officer Burnett that he had been in his own apartment all that evening. But "I may have," Menefee admitted. Menefee also denied making any lewd tongue gestures to Hovey. "I do lick my lips a lot," he admitted.

Menefee conceded that he had been convicted of two or three felonies and had been twice found guilty of "crimes involving lying, cheating or stealing."

Following the presentation of the evidence, Menefee moved to strike the Commonwealth's evidence. The trial court denied the motion and found Menefee guilty of statutory burglary in violation of Code § 18.2-91. The court explained its reasoning this way:

> The Court has listened very carefully to the evidence in the case. The Court carefully observed the demeanor of all of the witnesses who testified. The Court observed them on the witness stand, took into account their demeanor and their testimony and their relationship to the case and evaluated all of the factors that go into a credibility analysis. *The first observation the Court will make is*

> *that it believes completely and accepts in its entirety all of the*
> *testimony that was given by Ms. Hovey regarding the incident.*
> *The Court listened to her description of how the matter took place*
> *and the Court, without reservation, simply believes everything she*
> *said about it.* In addition, the Court believes what the officer had
> to say about his investigation into the incident and about what the
> defendant said to him regarding the incident itself, and to the
> extent that the defendant's testimony differs from or contradicts
> the testimony that was given by Ms. Hovey and Officer Burnett,
> the Court simply rejects the testimony of the defendant based on its
> analysis of the evidence.

The trial court also noted the evidence concerning Menefee's "mental state" and the influence of "voices" urging him to "hurt people." The court found Menefee's testimony about being invited into the apartment to be untruthful, noting that he gave "several versions of his activities that night, which contradict one another," and gave "numerous inconsistencies about what happened regarding the incident with Ms. Hovey." Assuring Menefee's counsel that he was "mindful of the argument made on the question of intent," the trial judge found Menefee guilty and sentenced him to a twelve-year prison term, with six years suspended.

II.

When faced with a challenge to the sufficiency of the evidence, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence" to support it. Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (citations omitted). Under this standard, a trial judge's factual findings cannot be disturbed on appeal unless no "rational trier of fact" could have come to the conclusions he did. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Holmes v. Commonwealth, 41 Va. App. 690, 691, 589 S.E.2d 11, 11 (2003); Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003).

Under this standard, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson, 443 U.S. at 318-19

(emphasis in original and citation omitted). It asks instead whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319 (emphasis in original)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. It also ensures that we remain faithful to our duty "not to substitute our judgment for that of the trier of fact, even were our opinion to differ." Crowder, 41 Va. App. at 663 n.1, 588 S.E.2d at 387 n.1 (citations and internal quotation marks omitted).

In addition, a trial judge sitting as factfinder is "presumed to know the law and to apply it correctly in each case." Crest v. Commonwealth, 40 Va. App. 165, 172 n.3, 578 S.E.2d 88, 91 n.3 (2003); see also Shenk v. Shenk, 39 Va. App. 161, 169, 571 S.E.2d 896, 900 (2002). Unless that presumption is rebutted, the very fact of a conviction necessarily implies that the trial judge decided all legally relevant factual disputes against the defendant. It follows, then, that "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution[.]'" Wright v. West, 505 U.S. 277, 296-97 (1992) (quoting Jackson, 443 U.S. at 326)).

III.

The trial court found Menefee guilty under Code § 18.2-91. That statute defines statutory burglary as, among other things, the commission of "any of the acts mentioned in § 18.2-89 or § 18.2-90" (which includes unauthorized entries of a dwelling at night) with "the intent to commit assault and battery." See generally Turner v. Commonwealth, 33 Va. App. 88, 92-93, 531 S.E.2d 619, 621 (2000). The *actus reas* of this particular version of burglary involves an unlawful entry of a dwelling at night. See generally Roger D. Groot, Criminal Offenses &

Defenses in Virginia 107-18 (2004). The *mens rea* includes the intent to unlawfully enter, coupled with the then-present intent to commit an assault and battery. Id. Without that coupled intent, "the act is a trespass only." 4 William Blackstone, Commentaries on the Law of England *227 (1769).

A.

On the entry issue, Menefee concedes that the evidence proved he entered Hovey's apartment without her permission and "contrary" to her will. Robertson v. Commonwealth, 31 Va. App. 814, 821, 525 S.E.2d 640, 644 (2000) (citing Davis v. Commonwealth, 132 Va. 521, 523, 110 S.E. 356, 357 (1922)). He claims he nevertheless had a "good faith claim of right" to enter her apartment because the trial court expressly *accepted* as a fact that he heard a "voice" inviting him into Hovey's apartment. Menefee finds this alleged factual finding implicit in the trial judge's remark that he accepted as true what "the officer had to say about his investigation into the incident and about what the defendant said to him regarding the incident itself . . . ."

In our opinion, Menefee's interpretation of the trial judge's remark distorts its intended meaning. In context, the trial judge was not saying he believed *Menefee* was telling the truth when he spoke to Officer Burnett — but, rather, that he believed *Burnett* was telling the truth "about what" Menefee said to him. And what Menefee told Burnett involved a patent inconsistency. Menefee first claimed he had been in his own apartment "all night long." He later claimed an unidentified woman's "voice" told him to "come in" the apartment. Both assertions stand in contrast to his earlier, equally inconsistent, claim (made directly to Hovey) that she "had gotten up and let him in" and "had told him to come in and sit down and wait for [her] children to go to sleep, and that [she] would be with him." The court rejected as untruthful Menefee's multiple versions of what happened that night, finding that they "contradict one another" and contain "numerous inconsistencies." Menefee's credibility also suffered from the

fact that, by his own admission, he was an "intoxicated" felon experiencing "mental trauma" caused by his "bipolar" psychiatric condition.

Under these circumstances, the trial court had ample reason to disbelieve that Menefee heard any voice — whether real or imagined — inviting him into Hovey's apartment. In its role as factfinder, the trial court may discount a defendant's "self-serving explanation as a mere effort at 'lying to conceal his guilt.'" Dugger v. Commonwealth, 40 Va. App. 586, 594 n.2, 580 S.E.2d 477, 481 n.2 (2003) (quoting Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001)). A factfinder may also find a defendant's falsehoods "probative to show he is trying to conceal his guilt, and thus is evidence of his guilt." Dugger, 40 Va. App. at 594 n.2, 580 S.E.2d at 481 n.2 (citations omitted); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (recognizing "general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt'"); Wright, 505 U.S. at 296 (holding that factfinder in criminal cases may consider the accused's false explanations as "affirmative evidence of guilt"). These principles naturally follow from the broader observation that "whenever a witness testifies, his or her credibility becomes an issue." Hughes v. Commonwealth, 39 Va. App. 448, 462, 573 S.E.2d 324, 330 (2002) (citation omitted).

B.

On the coupled intent issue, two legal principles guide our review of the trial court's factfinding. First, by entering Hovey's apartment without her permission, it can be presumed that Menefee did so "for an unlawful purpose." Scott v. Commonwealth, 228 Va. 519, 524, 323 S.E.2d 572, 575 (1984) (citing Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979)). Second, statutory burglary focuses solely on the defendant's intent at the time of the entry, not his purpose once inside. See Bruce v. Commonwealth, 22 Va. App. 264, 270, 469 S.E.2d 64, 67 (1996) (recognizing that burglary requires that "the intent to commit the

substantive crime therein is concomitant with the breaking and entering"). If the coupled intent exists at the time of entry, it makes "no difference that this purpose was not achieved," 3 W. LaFave, Substantive Criminal Law § 21.1(e), at 219 (2d ed. 2003), or whether the intended act "be actually perpetrated or not," Blackstone, Commentaries *227.

Guided by these two principles, we turn to the specific coupled intent found by the trial court: the intent to commit an assault and battery. "An assault and battery is the unlawful touching of another" that is neither consented to, justified, nor excused. Perkins v. Commonwealth, 31 Va. App. 326, 330, 523 S.E.2d 512, 513 (2000); see also Gnadt v. Commonwealth, 27 Va. App. 148, 151, 497 S.E.2d 887, 888 (1998). "The law upon the subject is intended primarily to protect the sacredness of the person, and, secondarily, to prevent breaches of the peace." Banovitch v. Commonwealth, 196 Va. 210, 219, 83 S.E.2d 369, 374 (1954) (citations omitted).

There is no doubt that, at the moment Menefee entered Hovey's apartment, shortly before midnight, he hoped to touch Hovey in a sexual manner. To use his own words, he "just took a chance" that night. The only issue, then, is whether he entered with the intent to sexually touch her in a manner that would constitute an assault and battery. We find nothing plainly wrong about the trial court's findings on this issue. Menefee and Hovey were not friends. They had never had a conversation, never been over to each other's apartments, and never had any social relationship. Their only prior interactions were the few occasions where he harassed her with lewd gestures and remarks. Menefee entered her apartment, drunk and uninvited, in the middle of the night while she and her children slept. Hovey awoke and found him standing over her crotch in a menacing position. Menefee's first words were sexual and, under the circumstances, no doubt intimidating to Hovey. He left her apartment only after she threatened to call the police and warned him of the consequences of raping her. Then, when questioned by the police,

Menefee gave a series of prevaricating stories that further underscored his guilt. Compounding all of this is the fact that Menefee, according to his own testimony, heard voices urging him to "hurt" people. These facts, in aggregate, provide a rational basis for concluding that Menefee entered Hovey's apartment with the intent to commit an assault and battery.

IV.

The trial court did not err in finding that Menefee unlawfully entered Hovey's apartment at night with the intent to commit an assault and battery. We thus affirm his conviction for statutory burglary under Code § 18.2-91.

<u>Affirmed.</u>