COURT OF APPEALS OF VIRGINIA

Present:    Judges Frank, Kelsey and Senior Judge Overton
Argued at Salem, Virginia


BEVERLY BUSH KINGSLEY

v.      Record No. 0587-03-2                    MEMORANDUM OPINION[*] BY
                                                JUDGE D. ARTHUR KELSEY
COMMONWEALTH OF VIRGINIA                         AUGUST 10, 2004



FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge

Taylor B. Stone (Murray J. Janus; Bremner, Janus, Cook & Marcus,
on briefs), for appellant.

Amy L. Marshall, Assistant Attorney General (Jerry W. Kilgore,
Attorney General; Jennifer R. Franklin, Assistant Attorney General,
on brief), for appellee.


On four grounds, Beverly Bush Kingsley challenges her convictions on two counts of

embezzlement under Code § 18.2-111 and one count of credit card theft under Code § 18.2-192.

First, she claims the prosecutor made objectionable comments during closing arguments.

Second, she argues that the trial court should have consolidated the two embezzlement charges

into a single count.  Third, Kingsley contends she could not be convicted of credit card theft of a

card "rightly in her possession."  Finally, she challenges the sufficiency of the evidence

supporting her embezzlement convictions.  Finding these arguments either procedurally

defaulted or substantively meritless, we affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

On appeal, we review the evidence "in the light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (citation omitted).

Patrick and Arlette deBarros own Edgemont Farm, a cattle farm near Charlottesville. Citizens of both France and Portugal, the deBarroses visit the farm several times each year and employ full time workers to run the farm and considerable estate located on the property. In May 1998, Patrick deBarros hired Beverly Kingsley as a bookkeeper and financial agent for Edgemont. Her job required her to pay farm expenses from the farm's checking account, to deposit checks payable to Patrick deBarros in a separate family checking account, to pay for miscellaneous expenses from one of two other personal checking accounts, and to make any personal purchases specifically requested by the deBarroses. For all farm related expenses, Patrick deBarros instructed Kingsley to pay invoices by check to the extent possible.

The deBarroses had a number of personal credit cards. Kingsley was given permission to use the cards when making purchases on behalf of, and only when specifically requested by, the deBarroses. One set of cards was issued on an American Express Gold Card account. When Patrick deBarros received in the mail Platinum Cards from American Express on a new account number, he directed Kingsley to cancel the older Gold Cards and to close the account. Instead of doing so, Kingsley retained a set of renewed Gold Cards and continued to use the card issued in Arlette deBarros's name. After instructing Kingsley to close the account, the deBarroses did not authorize any purchases on this account.

In 2000, an accountant working for the deBarros family discovered that the farm's cash expenditures for 1999 had tripled from the year before (from around $25,000 to around $80,000) and that Kingsley was no longer producing the required monthly financial reports. When confronted with these facts, Kingsley quit. The day she tendered her resignation and walked out, Kingsley cut herself a check for three weeks of unauthorized vacation pay.

Further review of the accounts revealed that between August 1998 and October 2000 Kingsley signed 109 checks made payable to cash. She also signed Patrick deBarros's name on several other checks drawn by others made payable to him. She cashed these checks as well. The deBarroses discovered that the American Express Gold account had been renewed, not cancelled, in 1999. Kingsley "used abusively" the renewed cards for her own personal benefit, charging approximately $11,000 in purchases made after March 1999. In addition, she wrote four checks to pay an American Express Gold Card invoice for purchases she claimed to have made for Arlette deBarros. Mrs. deBarros denied requesting or receiving any of these purchased items.

Kingsley's personal banking records showed she opened a checking account with a zero balance on September 1, 1999. In the first month alone, she made at least ten cash deposits from unverified sources totaling over $9,500. The large cash deposits continued throughout the tenure of her employment in amounts ranging from a couple thousand to several thousand dollars a month. Beginning in November 2000 — after Kingsley left her job at Edgemont Farm — the deposits decreased dramatically, amounting to little over $1,000 per month.

At trial, Kingsley denied taking any money for personal gain. All of the apparent defalcations, she asserted, could be explained as either legitimate payments of farm expenses by cash or authorized purchases specifically requested by the deBarroses. She admitted, for

example, using the American Express Gold Card after being instructed to close the account, but claimed she used the card to make purchases for Arlette deBarros.

At the close of the prosecution's evidence, Kingsley requested that the two embezzlement charges be consolidated into one. She based her request on a narrow factual point, contending

> there's one embezzlement charge which covers the longer period of time as opposed to two, even though there may be two bank accounts. It's Mr. and Mrs. deBarros's joint money and they testified they lived in that way and I would ask the Court to consolidate the embezzlement and have just one embezzlement charge . . . .

The prosecutor replied by pointing out "there are two separate sets of facts here for the embezzlement" — one was the farm account listing both deBarroses as account owners, the other was Arlette deBarros's personal account listing her as the sole owner.[1] Kingsley rejoined: "Well, if I'm not mistaken, I believe both names are on that account . . . ." Stating that Patrick deBarros was "not on that account," the trial court overruled the motion. Kingsley renewed the motion after the presentation of the defense evidence. The trial court again held: "I'll overrule. I think they're separate accounts."

In closing arguments, the prosecutor discussed how Kingsley, while working for Edgemont Farm, would often use cash to purchase personal products, spending upwards of $800 to $900 at a time. Referring to the testimony of a local clothier's employee who frequently dealt with Kingsley between 1994 and 2000, the prosecutor discussed Kingsley's normal practice of making large personal purchases with cash: "The manner of doing it was to find out how much all her purchases totaled, eight or nine hundred ($900) at a whack, and then she'd go to the bank and get cash." Kingsley objected: "Objection, Your Honor. She --- objection. Ms. Harry said

---

[1] Kingsley also had signature power over two other checking accounts: one listing Patrick deBarros and Kingsley, the second listing only Arlette deBarros.

she didn't know whether that was before '98 or not." The trial court overruled the objection, characterizing the prosecutor's statement as mere "argument."

As the prosecutor continued this line of argument, Kingsley again objected: "Objection, Your Honor. They didn't say only. They did not say that." The court overruled the renewed objection and stated: "The jury can recall. Argument is not evidence. The jury can recall what the evidence was." This brief cautionary instruction tracked a more elaborate instruction given to the jury at the start of the trial in which the court instructed the jury: "Final arguments are not evidence. Final arguments are simply an attempt to tell you, the jury, what facts you should find and how the facts should be applied to the law or the instructions that the Court has given you. Your job in this case is to determine the facts." At no point did Kingsley move the court for a mistrial or ask the court for any additional cautionary instructions.

The jury found Kingsley guilty on both counts of embezzlement and the count alleging credit card theft. Accepting the jury's recommended sentence, the trial court imposed a two and a half year prison term for each embezzlement charge. The trial court also fined Kingsley for the credit card theft and ordered her to make restitution.

II.

A.   IMPROPER COMMENTS BY PROSECUTOR

Kingsley claims the prosecutor made "several factual misrepresentations" during closing arguments and the trial court should have given a cautionary instruction directing the jury to disregard these remarks. Kingsley, however, never requested a cautionary instruction. Nor did she move for a mistrial. Under settled law, a "timely motion for a mistrial or a cautionary instruction is required to preserve the issue for appeal even if an objection was properly made to the conduct or comments and improperly overruled by the trial judge." Morris v. Commonwealth, 14 Va. App. 283, 287, 416 S.E.2d 462, 464 (1992) (*en banc*); see also Schmitt

v. Commonwealth, 262 Va. 127, 148, 547 S.E.2d 186, 200-01 (2001). "There appears to be no exception in Virginia law to the strict application of this rule." Bennett v. Commonwealth, 29 Va. App. 261, 281, 511 S.E.2d 439, 448-49 (1999).[2]

The trial court twice instructed the jury that closing arguments of counsel could not be considered evidence, once at the start of the trial and again at the moment of Kingsley's objection. This fact alone dissolves any possibility of a miscarriage of justice sufficient to trigger the ends-of-justice exception to Rule 5A:18. As a result, we do not address Kingsley's claim that the trial court erred in failing to sustain her objection and craft a more specific cautionary instruction *sua sponte*.

### B. SINGLE LARCENY DOCTRINE & EMBEZZLEMENT

Kingsley next argues the trial court erred by not consolidating her two embezzlement charges into one under the "single larceny doctrine." The doctrine's applicability to embezzlement remains an open question under Virginia law. See Bragg v. Commonwealth, 42 Va. App. 607, 611 n.3, 593 S.E.2d 558, 560 n.3 (2004). Determining whether it applies requires an analysis of the interplay between the common law antecedents of larceny and the purely statutory nature of the crime of embezzlement, see generally id.; Bruhn v. Commonwealth, 37 Va. App. 537, 559 S.E.2d 880 (*en banc*), aff'd, 264 Va. 597, 570 S.E.2d 866 (2002), as well as an examination of the impact of a recent amendment to the embezzlement statute, see Code § 18.2-111 (2003 Va. Acts ch. 733) ("Any person convicted hereunder shall be deemed guilty of larceny . . . .").[3]

---

[2] See also Martinez v. Commonwealth, 241 Va. 557, 559 n.2, 403 S.E.2d 358, 359 n.2 (1991); Taylor v. Commonwealth, 17 Va. App. 271, 274, 437 S.E.2d 202, 204 (1993).

[3] According to the single larceny doctrine, "unless the evidence proves that two or more separate and discrete thefts occurred at separate times which were not part of the same larcenous impulse, then thefts from the same room are but a single larceny." Bragg, 42 Va. App. at 611, 593 S.E.2d at 560 (quoting Richardson v. Commonwealth, 25 Va. App. 491, 497, 489 S.E.2d 697, 700 (1997) (*en banc*)). Used as a unit of prosecution concept for the common law offense

At trial, however, Kingsley never invoked the "single larceny doctrine" or alerted the trial court to its alleged applicability to the purely statutory crime of embezzlement. We thus cannot address it. Under Rule 5A:18, the "*same argument* must have been raised, *with specificity*, at trial before it can be considered on appeal." Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004) (emphasis added). "A general argument or an abstract reference to the law is not sufficient to preserve an issue." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*).[4]

As framed by Kingsley, the only issue before the trial court was whether the two embezzlement charges should have been consolidated because the thievery came from "joint money" owned by Patrick and Arlette deBarros. Both counsel and the trial court narrowed this point further by focusing on the named account owners of the separate accounts. And, on that subject, the trial judge correctly noted that Kingsley's factual assertion was partly mistaken. In fact, Patrick deBarros was not listed as a joint owner on Arlette's personal account.

---

of larceny, the "'overriding principle behind the single larceny doctrine is to prevent the state from aggregating multiple criminal penalties for a single criminal act.'" Millard v. Commonwealth, 34 Va. App. 202, 206, 539 S.E.2d 84, 86 (2000) (quoting Richardson, 25 Va. App. at 496, 489 S.E.2d at 700); see also West v. Commonwealth, 125 Va. 747, 754, 99 S.E. 654, 656 (1919) ("But a series of larcenous acts, regardless of the amount and value of the separate parcels or articles taken, and regardless of the time occupied in the performance, may and will constitute, in contemplation of law, a single larceny, provided the several acts are done pursuant to a single impulse and in execution of a general fraudulent scheme.").

[4] See also W. Alexandria Prop., Inc. v. First Va. Mortgage & Real Estate Inv. Trust, 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980) ("On appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court."); Floyd v. Commonwealth, 219 Va. 575, 584, 249 S.E.2d 171, 176 (1978) (holding that appellate courts will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue); Shenk v. Shenk, 39 Va. App. 161, 169, 571 S.E.2d 896, 900 (2002) (ruling that the "specific argument" made on appeal must have been made below).

In any event, we fail to see how the "joint money" allegation, by itself, would require consolidation given the unique facts of this case. Kingsley wrote 109 checks to cash from four separate accounts, cashed checks drawn by others payable to Patrick deBarros, and helped herself to three weeks of unauthorized vacation pay as she walked off the job. She made many of these misappropriations at different times, from different sources, over a period of more than two years. Other than relying on the single larceny doctrine, Kingsley cites to us no legal authority for defining the unit of prosecution inherent in the embezzlement statute so narrowly as to require — much less permit, see Code § 19.2-223 (authorizing consolidation for a period not exceeding six months) — the consolidation of these diverse acts of theft into a single indictment. We thus hold the trial court did not err by denying Kingsley's consolidation motion.

## C. CREDIT CARD CONVICTION

Kingsley challenges her credit card conviction, claiming that the evidence proved she obtained the cards lawfully. It follows, Kingsley argues, that she could not unlawfully steal credit cards that she had permission to possess. We agree with her abstract legal premise, but disagree with the factual predicate underlying it.

Under Code § 18.2-192(1)(a), theft of a credit card occurs when an individual "takes, obtains or withholds a credit card or credit card number from the person, possession, custody or control of another without the cardholder's consent." See generally Scott v. Commonwealth, 36 Va. App. 276, 281-82, 549 S.E.2d 624, 626-27 (2001). Unlike common law larceny, which requires "proof of an intent to permanently deprive," Code § 18.2-192 mandates only deprivation, regardless of length, coupled with "an intention to use, sell, or transfer." Scott, 36 Va. App. at 282, 549 S.E.2d at 626-27. The offense involves an "improper acquisition, possession, and distribution of credit cards," not a "subsequent misuse" of a lawfully possessed card. Sykes v. Commonwealth, 27 Va. App. 77, 81, 497 S.E.2d 511, 513 (1998).

Though Kingsley claims her initial possession of the credit cards in this case was lawful, the evidence proved she retained cards after being expressly directed to cancel the account. She then used the recently renewed cards for the purpose of making unauthorized purchases. These acts prove more than a mere misuse of lawfully possessed credit cards. The evidence shows instead that Kingsley retained the renewed cards with the intent to use them for her personal benefit. That Kingsley denied all this, of course, changes nothing. The jury was at liberty to disbelieve her and to treat her "self-serving explanation as a mere effort at lying to conceal her guilt." Dugger v. Commonwealth, 40 Va. App. 586, 594 n.2, 580 S.E.2d 477, 481 n.2 (2003) (quoting Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001)) (internal quotation marks omitted).[5]

### D. EMBEZZLEMENT CONVICTIONS

Finally, Kingsley challenges the sufficiency of the evidence supporting her two embezzlement convictions. Under Rule 5A:18, however, a defendant waives a sufficiency objection "when he fails to renew his motion to strike the evidence after presenting his case," White v. Commonwealth, 3 Va. App. 231, 234, 348 S.E.2d 866, 868 (1986); see also McGee v. Commonwealth, 4 Va. App. 317, 321, 357 S.E.2d 738, 739 (1987), and thereafter fails to raise the issue in a motion to set aside the verdict, Brown v. Commonwealth, 8 Va. App. 474, 480, 382 S.E.2d 296, 300 (1989); see also McQuinn v. Commonwealth, 20 Va. App. 753, 757, 460 S.E.2d 624, 626 (1995) (*en banc*). Kingsley made neither motion.

Conceding the applicability of Rule 5A:18, Kingsley claims we should reverse under the ends-of-justice exception to the procedural default rule. We reserve this exception for

---

[5] See also Dowden v. Commonwealth, 260 Va. 459, 469, 536 S.E.2d 437, 442 (2000); Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981); Mughrabi v. Commonwealth, 38 Va. App. 538, 548, 567 S.E.2d 542, 546 (2002); Morrison v. Commonwealth, 37 Va. App. 273, 284, 557 S.E.2d 724, 730 (2002).

"extraordinary situations" where the defendant can prove a clear, substantial, and material miscarriage of justice. Bazemore v. Commonwealth, 42 Va. App. 203, 218-19, 590 S.E.2d 602, 609-10 (2004) (*en banc*) (citations omitted). "The record 'must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred.'" Copeland v. Commonwealth, 42 Va. App. 424, 442, 592 S.E.2d 391, 399 (2004) (citations omitted); see also Michaels v. Commonwealth, 32 Va. App. 601, 608, 529 S.E.2d 822, 826 (2000) (observing that defendant must show "she was convicted for conduct that was not a criminal offense" or that "an element of the offense did not occur").

Kingsley's ends-of-justice argument for avoiding waiver of her sufficiency challenge is, simply put, that she has a valid sufficiency challenge. Under this tautological construct, to find no waiver we would have to rule the sufficiency challenge invalid on the merits — which would make the presence or absence of a Rule 5A:18 waiver entirely superfluous, since waiving a losing argument is no better or worse than losing it outright. As we recently explained:

> Otherwise, we would be required under the ends of justice exception to address the merits of every case where a defendant has failed to move to strike the Commonwealth's evidence as being insufficient to prove an element of the offense. Such a rule would obviate the requirement for making an adequate motion to strike or a contemporaneous objection that the evidence was insufficient.

Copeland, 42 Va. App. at 442, 592 S.E.2d at 400 (quoting Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997)).

In short, Kingsley cannot avoid Rule 5A:18 merely by casting doubt on her guilt. She must instead affirmatively prove her innocence. Neither her argument on appeal nor any evidence in the record satisfies this precondition for setting aside the uniform application of appellate default principles. Consequently, we do not address Kingsley's challenge to the sufficiency of the evidence supporting her embezzlement convictions.

III.

Kingsley failed to preserve for appeal her challenge to the prosecutor's closing arguments, the trial court's failure to apply the common law single larceny doctrine, and her claim that insufficient evidence supports her embezzlement convictions.  As to the remaining arguments on appeal, we find no merit in Kingsley's contention that the two embezzlement charges should have been consolidated or that the credit card theft count should have been dismissed as a matter of law.  For these reasons, we affirm the trial court's judgment.

<u>Affirmed.</u>